In the Matter of Morris Pottish, Petitioner, against American Veterans Committee, Inc., Respondent.

Supreme Court, Special Term, New York County, April 27, 1949.

*Morris Pottish*, petitioner in person.

*Lincoln Lauterstein* for respondent.

EDER, J. Proceeding to annul determination of respondent ousting petitioner as a member of respondent association.

The respondent is a membership corporation incorporated under the law of the State of New York. Petitioner was a chapter member thereof in good standing up to the time of his expulsion. Respondent has a board of directors known as National Planning Committee, and has also a committee known as National Administrative Committee composed of its chairman and vice-chairman and five members of the National Planning Committee elected to the National Administrative Committee by the National Planning Committee.

The petition alleges that on or about October 8, 1948, the National Administrative Committee purported to initiate disciplinary proceedings against the petitioner, then a chapter member and a member of the National Planning Committee; that on November 6, 1948, a hearing was held before a hearing committee appointed by the national chairman, which committee has no members of the National Administrative Committee or the National Planning Committee in its personnel; that on November 13, 1948, the National Administrative Committee made a written report to the National Planning Committee, and on November 13, 1948, the National Planning Committee voted to oust the petitioner from the respondent association's membership, effective forthwith.

Petitioner alleges that at all times during said disciplinary proceedings he was a member of Textile Chapter (National No. 331) of the respondent association, chairman of the New

York Area Council of said association, and a member of the National Planning Committee, and that unless barred by said ouster determination, still is at least such chapter member and chairman.

Petitioner alleges that since November 13, 1948, respondent has refused to, and still refuses, to recognize him as a member of respondent association, director or officer, and to grant him the personal and property rights and privileges thereunto appertaining, and unless appropriate relief is afforded will continue in such refusal.

Section 9 of article III, of respondent's constitution, entitled " Members ", provides: " An eligible applicant for membership may be denied such membership, or a member may be suspended or ousted only if such applicant is at the time of his application deliberately engaged in activities which are contrary to the purposes of the organization or inimical to its welfare, or if such member has deliberately engaged in such activities ".

In respondent's brief it is stated that petitioner was tried for acts inimical to respondent's welfare, and there appears to be no dispute that petitioner was tried and expelled for alleged violation of this provision of respondent's constitution.

It appears that on or about April 16, 1948, the National Administrative Committee initiated disciplinary charges against a member of the association, one Richard Cronin, charging him with deliberately engaging in activities contrary to the principles of the organization and inimical to its welfare in that he identified the respondent association with a partisan political campaign in support of the presidential candidacy of Henry Wallace; that at such time petitioner was a member of the National Planning Committee.

During all the subsequent proceedings against Cronin, and thereafter at all times mentioned in the disciplinary proceedings against petitioner, the petitioner, who is an attorney and counsellor at law, was and acted as attorney for said Cronin.

Petitioner, as such attorney for Cronin, challenged the regularity and legality of the proceedings taken against Cronin, and at all stages of the proceedings, from inception to conclusion, he contended that there was no jurisdiction over Cronin and participated in the proceedings under protest.

The hearing committee reported to the National Administrative Committee, which then reported to the National Planning Committee, and on September 18, 1948, the National Planning Committee voted to suspend Cronin from membership in the respondent association for a period of six months from said

date.  Petitioner, a member of the National Planning Committee, abstained from voting inasmuch as he was Cronin's attorney.

On September 27, 1948, Cronin, at a meeting of the New York Area Council of the respondent, appeared in his capacity as a delegate elected thereto by his chapter, and another delegate challenged his right to sit because of his suspension from membership in the association.

It appears that at the time of the challenge, the theretofore elected chairman of said council had resigned and that petitioner, as the duly elected vice-chairman, was acting as chairman under the provisions of the said council constitution; that said constitution contained no provision under such circumstances as to who should succeed the vice-chairman if he were disqualified or unable to serve.

Petitioner, as chairman of the meeting, disqualified himself from ruling on said challenge because he had appeared and still was acting as attorney for Cronin and therefore necessarily biased.

Petitioner then invited a motion pertinent to the matter of the challenge so that it could be passed upon by the body, that being his understanding of the proper parliamentary procedure under the circumstances.  Petitioner did not urge a motion either way, affirmative or negative.

It appears that a delegate then moved to seat Cronin, which motion was seconded.  That petitioner then offered to step down from the chair during the consideration of the motion because he was Cronin's attorney and biased in the matter; that petitioner was requested from the floor to remain in the chair; that he stated that he would remain only on unanimous consent, if there was no objection; that there was voiced no objection, and petitioner then stated he was continuing in the chair only on unanimous consent; that the motion was fully debated; that no one was cut off or denied the opportunity to speak; that petitioner did not participate in the debate and did not urge delegates to vote one way or another on the motion, and did not himself vote.  That upon the vote cast, Cronin remained seated.

No affidavits are submitted by respondent disputing these facts.

Respondent contends, as I comprehend it, that the act on the part of a territorial unit and the encouragement of such an act by petitioner as aforesaid, after notice of Cronin's suspension, was viewed by it as an invitation to anarchy in the organization, and that as a result of such conduct upon the part of the petitioner, respondent's national vice-chairman wrote all members of

the chapters of the New York Area Council whose delegates had voted to seat Cronin, urging them to repudiate the act of their delegates and warning them of the consequences which would ensue if they failed to do so.

It appears that the petitioner on September 30, 1948, caused to be circulated to all chapter chairmen a memorandum in which he maintained the stand taken by the said New York Area Council, and again, on October 5, 1948, wrote to chapter chairmen defending the seating of Cronin, and that on October 7, 1948, petitioner wrote to the national vice-chairman that he had instituted suit against respondent to enjoin it from taking any action against him or the chapter which had supported his stand.

Thereupon on October 8, 1948, the National Administrative Committee initiated the ouster proceedings against respondent, as mentioned, and which resulted in his expulsion.

The petitioner by this application seeks to review the legality and validity of his ouster and seeks an order annulling and setting aside the same and declaring that he is in good standing as a chapter member of respondent association, and directing that the respondent recognize and grant to him all of his rights and privileges of membership and office in said respondent as they existed prior to said ouster determination, with the same force and effect as though said ouster determination had not been made.

The petitioner urges other grounds challenging the legality and validity of the regularity and procedure of the respondent, and its various committees, but I deem it unnecessary to pass upon them, in view of the basic ground upon which I have decided to dispose of this application. I shall, therefore, assume, *arguendo,* that all proceedings as to procedure prior to ouster were regular, and that petitioner has exhausted all his remedies for review in the respondent association.

We come then to the basic ground of expulsion, provided by section 9 of article III of respondent's constitution, authorizing the ouster of a member deliberately engaging in activities inimical to its welfare.

Deliberately engaging in activities inimical to respondent's welfare, fairly, reasonably and sensibly construed, means, in my opinion, a course of conduct by a member intentionally designed to injure the respondent or to accomplish the destruction of the purposes for which it was founded and exists. The purposes for which the respondent was founded and exists are set forth in the preamble to its constitution, which reads as follows: " To preserve the Constitution of the United States; to insure the

rights of free speech, free press, free worship, free assembly and free elections; to provide thorough social and economic security to all; to maintain full production and full employment in our country under a system of private enterprise, in which business, labor, agriculture and government cooperate; to promote peace and good-will among all nations and all peoples; to support active participation of this Nation in the United Nations and other world organizations whose purposes are to improve the cultural, commercial and social relations of all peoples; to provide such aid to disabled veterans as will enable them to maintain the position in society to which they are entitled; to provide such financial, medical, vocational and educational assistance to all veterans as is necessary for complete readjustment to civilian life; to resist and defeat all attempts to create strife between veterans and non-veterans; and to foster democracy. We dedicate ourselves to these aims and for their attainment we establish this constitution ''.

Nothing that petitioner did can, in my opinion, by any fair, reasonable or just construction, be said to have been an indulgence in activity intentionally designed to injure or destroy any of these objectives.

All he did was to assert and reassert what he believed to be the legal rights and status of Cronin and this he had an absolute right to do, both as a member of the association, and as his lawyer, and in defending these legal rights of Cronin it was his duty to assert on every occasion whatever he deemed proper in order to preserve and protect such legal rights and status; nor did his continued protest and assertion of the illegality of Cronin's suspension constitute '' defiance '', as conduct inimical to the respondent's welfare or the purposes and objectives for which it was founded.

Even if the petitioner was in error in doing so, in my opinion, it cannot be said to constitute being engaged in activities inimical to the welfare of the association.

Adverting again to the area council meeting on September 27, 1948, the action and conduct of the petitioner, as taken by him, was, in my opinion, entirely proper in the situation then present. He acted fairly and in keeping with what he believed to be correct parliamentary procedure. Assuming he was in error, it does not constitute conduct which can be classed as deliberately engaging in activities which are contrary to the purposes of the organization or inimical to its welfare.

It is my considered and ultimate conclusion that, as a matter of law, the acts charged against the petitioner and for which he

was ousted, do not constitute conduct inimical to respondent's welfare and contrary to the purposes of the organization, and do not properly come within the ambit of section 9 of article III of respondent's constitution, and therefore the determination expelling the petitioner was and is illegal and void, *ab initio,* and the petitioner is entitled to reinstatement, and it is so adjudged and decreed.

The application is granted, as prayed for. Settle order.